1
2
3
4
5
6
7
8
9                **IN THE UNITED STATES DISTRICT COURT**
10                **FOR THE DISTRICT OF ARIZONA**
11

| | |
|---|---|
| **ROSITA CLENDON for her minor son DEWAYNE QUADE,** )<br>)<br>)<br> | |
| **Plaintiff,** ) | **No. CV 05-015-RCC-CRP** |
| ) | |
| **vs.** ) | |
| ) | **REPORT AND RECOMMENDATION** |
| **MICHAEL ASTRUE, Commissioner** ) | |
| **of Social Security,** ) | |
| **Defendant.** ) | |
| _____ ) | |

Pending before this Court is Plaintiff's Application for Attorney's Fees.  (Doc 34).

Plaintiff's counsel requests $ 5,461.76 in fees pursuant to 28 U.S.C. § 2412(d), the Equal

Access to Justice Act ("EAJA") for 35.5 hours worked.  She requests that these fees be paid

directly to her.  In its Response, the Government objects to $855.15 of the alleged fees as

well as counsel's request that the fees be paid directly to counsel.  (Doc 35).  Plaintiff filed

a Reply and the Motion is now ready for adjudication.  (Doc 38).

**I.  Reasonableness of Fees**

*A.  Summary of Parties' Positions*

Plaintiff's counsel claims $5,461.76 in attorney's fees that Plaintiff incurred when

Plaintiff's counsel successfully represented Plaintiff and her minor son in their social security

income case.  Plaintiff's counsel claims these fees under an Equal Access to Justice Act ("EAJA") fee-shifting statute.  Congress intended the EAJA to "remove an obstacle to contesting unreasonable governmental action through litigation." *Goldhaber v. Foley*, 698 F.2d 193, 195 (3rd Cir. 1983).  The specific EAJA statute in this case applies to civil litigation involving the federal government.  The statute requires:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.  28 U.S.C. § 2412(d)(1)(A).

Defendant in this case does not argue that the United States was substantially justified in its position or that special circumstances make an award of attorney's fees to Plaintiff's counsel unjust.  Defendant contests specifically 4.8 hours claimed by Plaintiff's attorney for a total of $855.15.  Defendant alleges these 4.8 hours are clerical or duplicative in nature and therefore not reimbursable under the EAJA.

Defendant argues purely clerical tasks are not reimbursable under the EAJA.  To support its position, Defendant cites a footnote from a Supreme Court case stating that "purely clerical or secretarial tasks" should not be billed at paralegal rates.  *Missouri v. Jenkins*, 491 U.S. 274, 288 fn. 10 (1989).   Post-*Jenkins*, lawyers are not routinely reimbursed for purely clerical tasks.  Purely clerical tasks are those that require no legal skill or are unnecessary for a lawyer to perform them.

Arguing Plaintiff's counsel should not be reimbursed for tasks that are clerical in nature, Defendant cites three cases in which courts did not reimburse attorneys for tasks such as updating case lists or reviewing returns of service.  *See Spegon v. Catholic Bishop*, 175 F.3d 544, 553 (7th Cir.1999), *Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325 (5th Cir.1980), *Mobley v. Apfel*, 104 F.Supp.2d 1357, 1360 (M.D. Fla.2000).  These cases do not carry precedential weight and neither of the two circuit court cases cited address fees under the EAJA.  *Spegon*, 175 F.3d at 548 (fees paid under the Fair Labor Standards Act), *Jones*, 630 F.2d at 324 (fees paid under Title VII Civil Rights Act).

*B.  Specific Contested Tasks*

When tasks are not purely clerical, but rather involve some legal skill as well as clerical skill, courts must determine whether attorneys are entitled to fees for those tasks.  In the following subsections, this Court addresses the specific tasks objected to by the Defendant.  In analyzing Defendant's objections, this Court finds that the specific tasks are not purely clerical and they are for reasonable amounts of time.  As such, Plaintiff's counsel should be reimbursed for these tasks.

*1.  Telephone Calls*

Defendant objects to 1.0 hour of telephone calls Plaintiff's counsel made to Plaintiff and the Clerk's Office over the course of the case.  Citing the EAJA log submitted by Plaintiff's counsel, Defendant objects to telephone calls made to Plaintiff and the Clerk's Office on 2/2/05, 4/15/05, 8/1/05, 9/22/05, 2/22/06, 3/13/06, 4/17/06, 5/30/06, and 8/3/06.  Of the one hour in phone calls claimed by Plaintiff's attorney,  0.2 of it was spent communicating with the Clerk's Office.  In the remaining portion of the hour claimed, Plaintiff's counsel communicated with her client.

This Court will not deny Plaintiff's counsel compensation for time she spent communicating with her client and discussing the progress of the case with the Clerk's Office.  A lawyer has an ethical responsibility to communicate with a client.  This responsibility includes keeping the client reasonably informed about the status of the matter and explaining the matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.  Model Rules of Professional Conduct Rule 1.4. Defendant alleges these conversations could have been made by a secretary and did not involve legal skill.  It is unclear whether legal skill was needed in the conversations Plaintiff's counsel had with the Clerk's Office or Plaintiff, but certainly legal issues could arise during those conversations in which a lawyer calls her client to update the client on the case or to check the progress of the case with the Clerk's Office.  These telephone calls, totaling only an hour's worth of time, are reasonable fees and should be compensated.

1   *2. Motions on Extensions of Time*

2       Defendant also objects to 1.2 hours of time Plaintiff's counsel spent drafting motions

3   and reviewing orders on extensions of time.  Defendant offers no specific reasons why

4   Plaintiff's counsel should not be reimbursed for this time other than "Plaintiff should not be

5   compensated for time her attorney spent seeking extensions to file her own pleadings."  The

6   time Plaintiff's attorney spent seeking these extensions is time for which a client would

7   reasonably anticipate paying an attorney.  Absent evidence that the extensions were

8   excessive or frivolous, this Court finds that the time spent on the extensions was reasonable

9   and should be compensated.

10  *3. Procedural Matters*

11      Defendant also objects to 2.6 hours of time Plaintiff's counsel spent reviewing court

12  orders on procedural matters, reviewing summons, and serving summons.  Defendant claims

13  entries from 1/12/05, 1/13/05, 1/14/05, 1/28/05, 4/19/05, 5/19/05, 6/24/05, 10/19/05, 1/2/06,

14  6/28/06, 12/26/06 all pertain to secretarial-focused tasks.  The Court has reviewed these

15  entries and finds they are for reasonable amounts of time and require some legal skill.  An

16  attorney has an obligation to stay current with her case.  Reviewing procedural orders, all of

17  which pertain to the progress of the case, is one of the ways to stay current.

18  *4. Duplicative Research*

19      Finally, Defendant alleges 0.75 hours claimed by Plaintiff's counsel is duplicative.

20  The 0.75 hour requested reduction pertains to research Plaintiff's counsel did on December

21  29, 2004 and April 15, 2005.  Defendant contends that no new research was required in April

22  2005 because Plaintiff's counsel had already filed the complaint and the complaint was not

23  amended after Platinfff's counsel completed the April 2005 research.

24      This Court will not micromanage an attorney's approach to a case.  There are many

25  reasons Plaintiff's counsel may have researched, in April 2005, the same issues she

26  researched in December 2004.  It appears Plaintiff's counsel received a Notice from Appeals

27  Council reconsidering the case and a denial of review of the administrative law judge's

28  decision.  Receipt of this information may have led Plaintiff's counsel to conduct some

1   limited repetitive research to ensure that she was still proceeding in the course most

2   appropriate for her client.  This fee, of 0.75 hours, is not unreasonable and Plaintiff's counsel

3   should be compensated for it.

4          It is the Report and Recommendation of this Magistrate Judge that Plaintiff's counsel

5   be compensated for the full $ 5,461.76 requested.  The fees are reasonable and should be paid

6   under the EAJA.

7   **II.  Payment of Attorney's Fees Directly to Plaintiff's Counsel**

8   *A.  Summary of Parties' Positions*

9          The second issue before this Court is whether Plaintiff's counsel is entitled to have

10  the EAJA award of attorney's fees paid directly to her.  Plaintiff's counsel argues payment

11  of attorney's fees directly to Plaintiff's counsel is permitted under the EAJA.  Defendant

12  objects, arguing payment of attorney's fees under the EAJA must be paid to the actual

13  prevailing party in the lawsuit, not that party's attorney.[1]

14         Plaintiff's counsel offers numerous arguments to support direct payment of the fee

15  award to her, as Plaintiff's attorney.  Plaintiff's counsel contends the Government has

16  historically paid the EAJA award of attorney's fees directly to attorneys.  She also asserts

17  Congressional intent when enacting the EAJA and its subsequent amendments supports her

18  position.  She further offers judicial interpretation of the Federal Claims Act ("FCA"),

19  another federal fee-shifting statute.  It provides for direct payment of the fee award to the

20  attorney.  Finally, Plaintiff's counsel contends attorney's fees will be subject to offset for

21  plaintiffs' debts if paid directly to plaintiffs and that offset thwarts the purpose of the EAJA

22  as a fee-shifting statute.

23         Objecting to Plaintiff's request that attorney's fees be paid directly to Plaintiff's

24  counsel, Defendant argues the plain meaning of the EAJA allows payment of fees only to the

25  _____

26         [1] Before analyzing this issue, the Court is careful to point out that the question of
    whether an attorney has the right to "receive" fees is distinct from the questions of whether
27  an attorney has the right to seek fees or waive fees.  The law is settled on those points.  *Evans
    v. Jeff*, 475 U.S. 717, 731-733 (1986), *Willard v. City of Los Angeles*, 803 F.2d 526, 527 (9th
28  cir.1986).

1   actual party.  Defendant also asserts a civil rights fee-shifting statute, § 1988, and its

2   accompanying case law, which requires payment of attorney fees to the actual party and not

3   the attorney, should inform this Court's analysis of the EAJA.  Finally, the Government

4   contends Plaintiff's counsel could be paid directly with a valid assignment between Plaintiff

5   and Plaintiff's counsel created *after* the fees are awarded.  The Government does not,

6   however, take a position on whether the award of attorney's fees could be subject to offset

7   in the event of a valid assignment.

8        To reach a decision on this issue, the Court reviewed the EAJA in its entirety,

9   considered principles of statutory construction, and analyzed the body of case law

10   interpreting the EAJA and other federal fee-shifting statutes.  It is the Report and

11   Recommendation of this Court that Plaintiff's counsel receive direct payment of the EAJA

12   award for attorney's fees.  While courts are divided on this question under the EAJA, a

13   historical survey of congressional intent when enacting the EAJA and its subsequent

14   amendments, as well as a close analysis of the case law on a number of fee-shifting statutes

15   demonstrates a judicial appreciation that earned fees belong to the attorney, not the client.

16   An interpretation of the EAJA that would entitle the prevailing party to the receipt of the fee

17   award, as opposed to counsel, would frustrate this statute's remedial purpose and accord the

18   plaintiff an unintended windfall.  Such results thwart the legislative intent of the statute and

19   produce illogical results

20   **B. Analysis of the Plain Language of the EAJA**

21        The EAJA is a comprehensive federal statute designed to afford private litigants a

22   means of recovering their attorney's fees in actions brought by and against federal agencies.

23   The specific subsection of the EAJA at issue in this case is § 2412(d)(1)(A).  This subsection

24   provides an award of attorney's fees to prevailing parties who satisfy the statutory

25   requirements and are involved in general civil litigation against the government.  This

26   subsection was addressed in amendments, the Savings Provisions, enacted by Congress in

27   1985.

28        To determine whether direct payment of attorney's fees to counsel is appropriate

1   under the EAJA, this Court begins by examining the plain meaning of the statute.  Whether
2   the 1985 Amendments, i.e. the Savings Provisions, are part of the statute and thus subject to
3   a plain meaning analysis is a matter of current judicial debate.  This Court will address both
4   the plain meaning of subsection § 2412(d)(1)(A) and the Savings Provisions.  The Court's
5   reasoning for addressing both parts of the statute is outlined in the Savings Provisions
6   section.

7       The first step in interpreting a statute is to determine whether its language indicates
8   a clear and unambiguous meaning.  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997); 2A
9   Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 45:2 (7th ed.2007).
10  Courts "inquiries must cease if the statutory language is unambiguous and 'the statutory
11  scheme is coherent and consistent.'" *Robinson*, 519 U.S. at 340 (*quoting United States v. Ron
12  Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989)).

13  ***1.  Plain Language of § 2412(d)(1)(A)***

14      Section 2412(d)(1)(A) of the EAJA provides "a court shall award *to a prevailing party
15  other than the United States* fees and other expenses . . ." when the government's position
16  is not substantially justified.    28 U.S.C. § 2412(d)(1)(A) (*emphasis added*).    The
17  Government asserts that this language indicates clearly and unambiguously that fees be paid
18  to the Plaintiff, who is the *prevailing party* and not to the Plaintiff's attorney.

19      Other courts have agreed with the Government's interpretation of the statute.  The
20  Tenth Circuit held the plain meaning of § 2412(d)(1)(A) resulted in "the prevailing party,
21  who incurred the attorney's fees, and not that party's attorney, [being] eligible for an award
22  of attorney's fees."  *Manning v. Astrue*, 510 F.3d 1246, 1249-1250 (10th Cir.2007).  The
23  Federal Circuit also held the EAJA "requires any [EAJA] fee award is made to the
24  'prevailing party', not the attorney."  *Phillips v. Gen. Servs. Admin.*, 924 F.2d 1577, 1582
25  (Fed. Cir.1991).  Finally, the Eleventh Circuit affirmed, *per curiam*, a District Court decision
26  in which the District Judge held "[T]he [EAJA] fee award belongs to the client, and an
27  attorney has no independent right to a fee award under the EAJA."  *United States v.
28  Adkinson*, 256 F.Supp.2d 1297, 1318 (N.D.Fla.2002), *affirmed*, 360 F.3d 1257 (11th

cir.2004) (*per curiam*).  In each of these three cases, the courts limited their plain meaning analysis to subsection 2412(d)(1)(A).  The courts did not consider the statute in its entirety, which would include the Savings Provisions.

### 2.  Plain Language of Savings Provision

Plaintiff argues the Government reads the statute too narrowly by viewing subsection 2412(d)(1)(A) in isolation and relying solely upon the words "a court shall award [fees] to a prevailing party."  Plaintiff would have this Court analyze the plain meaning of the statute as a whole, including the Savings Provision added in the 1985 amendments.  The Savings Provision reads:

> Section 206(b) of the Social Security Act . . . shall not prevent an award of fees and other expenses under section 2412(d) of title 28, United States Code . . . Section 206(b)(2) of the Social Security Act . . . shall not apply with respect to any such award but only if, where the *claimant's attorney receives* fees for the same work under both section 206(b) of that Act . . . and section 2412(d) of title 28, United States Code . . ., the claimant's attorney refunds to the claimant the amount of the smaller fees.   Equal Access to Justice Act, Section 206 of Pub.L. 96-481, as amended by Pub.L. 99-80, § 3, Aug. 5, 1985, 99 Stat. 186.   (*emphasis added*).

The Savings Provision directs the attorney to refund to her client the lesser of her fee awards, if she is awarded fees for the same work under both the EAJA and the Social Security Act. Plaintiff contends that the Savings Provision acknowledges that the attorney is the direct recipient of the fee award under both 28 U.S.C. § 2412(d)(1)(A) (the EAJA) and 42 U.S.C. § 406(b) (the Social Security Act).  If the attorney was not the recipient of both awards, the attorney would not be in the position to refund the lesser fee amount to the claimant.  It follows, then that the Savings Provision would be superfluous if the recipient of the attorney's fees was the actual party rather than the attorney.  The Savings Provision anticipates that the attorney will directly receive the fee under the EAJA as well as under 406(b).

As the Plaintiff asserts, this Court must consider the plain meaning of the EAJA as a whole and construe subsection 2412(d)(1)(A) in harmony with every other section, including the Savings Provision and §§ 2412(d)(1)(B), (2)(A).  *See Smith v. United States*, 508 U.S. 223, 233 (1993) ("Just as a single word cannot be read in isolation, nor can a single provision

- 8 -

of a statute."); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988) ("Statutory construction . . . is a holistic endeavor.  A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.") (internal citations omitted).  This Court does not find either the Savings Provision or §§ 2412(d)(1)(B), (2)(A) conclusive on the issue of whether § 2412(d)(1)(A) prevents payment of attorney's fees to the attorney directly.   Those provisions, however, cast doubt on the certitude that the use of "prevailing party" in § 2412(d)(1)(A) permits payment of attorney's fees only to the actual party.  These provisions undermine the "coheren[ce] and consist[ency] of the statutory scheme the government urges. *Robinson*, 519 U.S. at 340; *see also*, Sutherland, § 45:2-8.  Accordingly, this Court reaches beyond the bare language of the statute to determine and effect Congressional intent of the statute.

### C. Absurd Result

It is worth noting, even if the plain language of the statute was clear and unambiguous and did not engender questions about the coherence and consistency of all its provisions, courts are entitled to look beyond the plain meaning of a statute in the rare instance where a literal application " would lead to absurd results."  *Reno v. National Transp. Safety Bd.*, 45 F.3d 1375, 1379 (9th cir.1995); *see also Haggar Co. V. Helvering*, 308 U.S. 389, 394 (1940) ("All statutes must be construed in the light of their purpose.  A literal reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with the legislative purpose."); Sutherland, § 45:12 ("[I]t is fundamental . . . that departure from the literal construction of a statute is justified when such a construction would produce an absurd and unjust result and would clearly be inconsistent with the purposes and policies of the act in question.").

Absurd results are a reality in cases where courts read the plain meaning of § 2412(d)(1)(A) to require the payment of attorney's fees to the actual party rather than that party's attorney.  Under such a practice, the actual party receives the award of attorney's fees

1  and before that award can be paid from the party to the attorney, the award is subject to offset

2  for any debts the party may owe the government.   In fact, since the government began

3  contesting direct payment to attorneys as part of a policy change last summer, a number of

4  attorneys have lost their earned fees to the debts of their clients. *See infra.*

5      Under the authority of the Debt Collection Improvement Act of 1996, the federal

6  government can administratively offset government disability benefits that are paid directly

7  to a person who owes the federal government, and in some cases a state government,

8  outstanding debt.  In these instances, the Department of Treasury's Financial Management

9  Service has the authority to collect nontax debts owed to the United States government by

10  offsetting payments made by other agencies. *See* 31 U.S.C. § 3716; 31 C.F.R. § 285.5(a)(1);

11  *see also* Exec. Order No. 13,019, 61 Fed.Reg. 51, 763 (Sept. 28, 1996) ("[T]he primary

12  purpose of the Debt Collection Improvement Act is to increase the collection of nontax debts

13  owed to the Federal Government ..."). All federal payments, including "fees," are subject

14  to administrative offset.   31 C.F.R. § 285.5(e)(1).   The only exceptions are for those

15  payments specifically listed. *Id.* § 285.5(e)(2); *see also* § 285.5(e)(3)(i)(A) (noting that

16  special rules apply to offset of Social Security benefit payments, excluding SSI payments).

17  One payment type excluded from offset is payments for which a statute expressly prohibits

18  offset. *Id.* § 285.5(e)(2)(v); *see also* 31 U.S.C. § 3716(e)(2).  An EAJA award is not among

19  the listed exceptions in § 285.5(e)(2).  Nor does the EAJA statute prohibit offset of any fee

20  award. *See* 28 U.S.C. § 2412.  Furthermore, the Debt Collection Improvement Act does not

21  exempt an EAJA attorney's fees award from offset. *See* 28 U.S.C. § 3716.

22      A number of attorneys have already lost earned fees to the debts of their clients.  For

23  instance, in the Tenth Circuit an attorney lost earned fees to the education debt of his client.

24  *Manning*, 510 F.3d at 1247-1248. In that case the prevailing party, Ms. Manning, owed the

25  United States Department of Education an outstanding school loan debt. *Id.*  Because the

26  Tenth Circuit held the EAJA award of attorney's fees must be paid to the actual party, the

27  attorney in that case lost $1,966.12 of the attorney's fee that the attorney had already earned.

28  The government withheld the fee to pay Ms. Manning's education debt.  In an Alabama

District court case, an attorney lost the entire award of attorney's fees. *Reeves v. Barnhart*, 473 F.Supp.2d 1173, 1175 (M.D. Ala.2007). Plaintiff's counsel in *Reeves* accumulated $4,201.83 in attorney's fees, which the court awarded to the Plaintiff. After the Plaintiff was paid the fees, the Department of Treasury's Financial Management Service withheld all $4,201.83 of the award to offset Plaintiff's debt of outstanding child support that Plaintiff owed to Chilton County (Alabama) Department of Human Resources. *Reeves*, 473 F.Supp.2d at 1175. In an Oklahoma District Court, an EAJA award of attorney's fees was offset in its entirety to satisfy Plaintiff's child support obligations owed in an unrelated matter. *McCormick v. Astrue*, Case No. Civ-04-221-SPS at 1 (E.D. Okla. April 24, 2007). In a California District court case, the Judge allowed the Department of Treasury's Financial Management Service to withhold $ 640.92 from the award of attorney's fees under the EAJA because of a debt the plaintiff owed the federal government. *Whitmore v. Astrue*, 2008 WL 276387, 1 (N.D. Cal.2008). Other cases from the Northern District of California also allowed for administrative offset. *See McCarty v. Astrue*, 505 F.Supp.2d 624 (N.D. Cal.2007) (federal debt of $669.07 withheld), *Suttice v. Barnhart*, No. 05-02021 (N.D. Cal. April 19, 2007) (federal tax debt).

Taking awards of attorney's fees to offset the debts of attorneys' clients seems an absurd interpretation of a statute meant to encourage attorney representation in cases where the government's resources significantly outweigh the individual's resources. The Tenth Circuit, while in holding that payment of attorney's fees must go to the actual party, has voiced concern that such a result is "counter-intuitive." *Manning*, 510 F.3d at 1255. Such an illogical result is inconsistent with the purposes and policies of the EAJA.

### D.  The Chilling Effect

The Supreme Court has expressed concern about a chilling effect on a claimant's ability to obtain representation when there is a great likelihood that an attorney will not be paid for work the attorney performed. *Evans v. Jeff D.*, 475 U.S. 717, 741 n. 34 (1986). In *Evans*, the Supreme Court held a federal civil rights fee-shifting statute did not bestow the fee award on the attorney. *Evans*, 475 U.S. at 730. In reaching this conclusion, however, the

1    Supreme Court acknowledged and expressed concern that not paying an attorney the award

2    of attorney's fees directly may result in a chilling of the claimant's ability to obtain

3    representation.  The Court said:

4            We are cognizant of the possibility that decisions by individual clients to
         bargain away fee awards may, in the aggregate and in the long run, diminish
5            lawyers' expectations of statutory fees in civil rights cases.  If this occurred,
         the pool of lawyers willing to represent plaintiffs in such cases might shrink,
6            constricting the 'effective access to the judicial process' for persons with civil
         rights grievances which the Fees Act was intended to provide ... We believe,
7            however, that as a practical matter the likelihood of this circumstance arising
         is remote. *Id*. at 741 n. 34.
8

9            While the likelihood of a chilling effect may be remote in civil rights cases, it is a real

10   result in social security disability cases.  As evidenced from the numerous cases in which

11   awards of attorney's fees have already been used to pay the debts of clients, attorneys are

12   losing their earned fees.  This is predictable in the social security benefits context.  Plaintiffs

13   are disabled people, unable to pursue gainful employment and frequently in distressed

14   financial circumstances.  This is exacerbated by the years it takes to pursue a claim through

15   both the administrative process as well as the court process.  Moreover, as here, the fee award

16   is usually quite modest as compared to an award under 42 U.S.C. § 1988, which is usually

17   in the tens or hundreds of thousands of dollars.  The potential for an entire fee award to be

18   offset in the Social Security context is great given both the modest means of many claimants

19   and the relatively small fee awards in the typical cases.

20           This is an absurd result that thwarts the purpose of the EAJA.  In cases where a plain

21   meaning interpretation does produce an absurd result, the Ninth Circuit has found it "entirely

22   appropriate to consult all public materials, including the background of [the statute] and the

23   legislative history of its adoption."  *Mattel, Inc. v. MCA Records*, 296 F.3d 894, 905 (9th

24   Cir.2002) (internal citations omitted).  Thus, a thorough review of the EAJA's legislative

25   history is necessary because the statute is ambiguous, and even if it is not, a plain meaning

26   interpretation leads to absurd results.

27

28

*E.   Interpretation of the Statute in Light of the Legislative History and Cannons of Construction*

*1. Legislative History*

The legislative history of the EAJA establishes that the purpose of the bill was to "reduce the deterrents and disparity" for individual claimants bringing litigation against the government by entitling those claimants who were prevailing parties to recover an award of attorney's fees and other expenses, unless the government can show it was substantially justified in its action. H.R. Rep. No. 96-1418, at 6 (1980), reprinted in 1980 U.S.C.C.A.N. 4984, 4984. Such a federal fee-shifting statute is meant to equalize resources between an individual claimant and the government. Congress was concerned that the government could coerce compliance with its determinations without being challenged from individuals who had significantly fewer resources than the government. H.R. Rep. No. 96-1418, at 9 (1980), reprinted in 1980 U.S.C.C.A.N. 4984, 4988. "[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." *Commissioner v. Jean*, 496 U.S. 154, 163 (1990).

With these goals in mind, Congress provided for payment of attorney fees. Payment of attorney fees achieves the goals of the EAJA because claimants who may be unable to pay an attorney can obtain representation. Without the fee-shifting statute, payment of attorney's fees would be doubtful and as discussed *supra*., non-payment of fees has the real possibility of chilling claimants ability to obtain representation. Interpreting the EAJA to allow direct payment of attorney's fees to attorneys who have already earned those fees best reflects Congress's goal of assuring competent representation of persons challenging unreasonable government action.

Payment of attorney's fees directly to the claimants has the potential to thwart congressional intent and discourage attorney representation of social security claimants. If earned attorney fees are paid to the claimant who has debt and not to the attorney who has earned the fees, claimants receive an unintended windfall of money in the benefit of having their debt paid. The government also receives an unintended windfall because it secures

1   payment of the monies owed by the claimant even though this money was earned and should

2   be paid to the attorney.  Given the reality of offset, attorneys would be less inclined to

3   undertake representation of a social security claimant with debt obligations because the

4   EAJA fee would be subject to offset.

5        A construction of the EAJA that effects windfall payments to individual social

6   security claimants and reduces the availability of counsel for future claimants thwarts

7   congressional intent and leads to an irrational and unfair result.

8   *2.  Agency Administration Prior to Litigation*

9        In addition to reviewing the legislative history when interpreting a statute, courts may

10  also consider how a federal agency interpreted the law prior to litigation.  Sutherland, § 45:2

11  & n. 14.  A long-continued practical interpretation of a statute by an administrative agency

12  is influential in interpreting a statute.  Sutherland, § 49:03; *International Brotherhood of*

13  *Teamsters, Chauffeurs, Warehousemen and Helpers of American v. Daniel*, 439 U.S. 551,

14  566 n. 20 (1979) ("[A]n administrative agency's consistent, longstanding interpretation of

15  the statute under which it operates is entitled to considerable weight.").  Moreover, when the

16  agency adopts a conflicting position to its earlier position, the court is less bound to defer to

17  the agency's new conflicting interpretation.  Sutherland, § 49:05; *Good Samaritan Hosp. V.*

18  *Shalala*, 508 U.S. 402, 417 (1993) ("An agency interpretation of a relevant provision which

19  conflicts with the agency's earlier interpretation is entitled to considerably less deference

20  than a consistently held agency view" (internal citations omitted).

21       With the issue before this Court, the Government has historically paid attorneys

22  directly when those attorneys requested direct payment of EAJA attorney's fees.  The Social

23  Security Administration paid fees to attorneys directly so frequently that it had an electronic

24  deposit system set up, for which attorneys could register.  *See Rodney E. Winslow v. Michael*

25  *J. Astrue, Commissioner of Social Security Administration*, 2007 WL 2726635, Exhibit Q

26  (Appellate Brief to the Tenth Circuit).  The Government now objects to the payment of

27  attorney's fees directly to attorneys and concedes this objection is a result in a change of

28  policy initiated by a Department of Justice review of agency practice.  The Government,

however, clearly had a policy of paying attorney's fees directly to attorneys, as evidenced by its direct deposit system.

### F. Judicial Interpretation of EAJA and Other Fee-Shifting Statutes

An interpretation of the EAJA to permit an award of attorney's fees to be paid directly to attorneys is consistent with judicial interpretations of other federal fee-shifting statutes. Courts have held attorney's fees can be paid directly to attorneys under the fee-shifting provisions of the Internal Revenue Code, the Right to Financial Privacy Act, the Truth in Lending Act, the Civil Service Reform Act, and the False Claims Act.

### 1. The Internal Revenue Code

The Internal Revenue Code provides "the prevailing party may be awarded" attorney's fees. Internal Revenue Code, 26 U.S.C. § 7430(a)(2). In a Fifth Circuit case, the Court held that attorney's fees awarded under the Internal Revenue Code cannot be set off against the plaintiff's tax liabilities because those fees belong to the attorney, not the plaintiff. *Marre v. United States*, 117 F.3d 297, 304 (5th Cir.1997). In *Marre*, the Fifth Circuit observed that "the prevailing party is only nominally the person who receives the award; the real party in interest vis-a-vis attorney's fees awarded under the statute are the attorneys themselves." *Id*. at 305. The court concluded that the fees could not be set off against the plaintiff's debts because they belonged to the attorney. *Id*. at 304. Notably, the Government in subsequent EAJA fee award cases has conceded that in the Fifth Circuit the *Marre* decision interpreting the Internal Revenue Code provision controls the same issue presented under the EAJA. *See Bell v. Astrue*, No. 1:06cv0036-D-A (N.D.Miss. May 30, 2007), and *Guyton v. Astrue*, No. 1:06cv0189-M-A (N.D.Miss. May 30, 2007). In both *Bell* and *Guyton*, the government withdrew its objection that the requested EAJA fees not be made payable to plaintiff's counsel, stating that "Defendant Agency has changed its policy in the Fifth Circuit to be consistent with *Marre*." *Bell*, No. 1:06cv0036-D-A (N.D.Miss. May 30, 2007); *Guyton*, No. 1:06cv0189-M-A (N.D.Miss. May 30, 2007).

### 2. The Right to Financial Privacy

The language of the Right to Financial Privacy Act is shares similarities to that of the

1    EAJA.  *Compare* Right to Financial Privacy Act, 12 U.S.C. § 3417(a)(4) (stating that the

2    Government "is liable *to the customer* " for fees) *with* EAJA (stating that "the court shall

3    award *to the prevailing party* fees"). Judicial interpretation of this statute is useful to

4    interpreting the EAJA not only because of the similarities in statutory language, but also

5    because the acts share identical purposes of enabling individuals to attract attorneys and

6    bring meritorious litigation. *See* H.R. Rep. No. 96-1418, at 6 (1980) and *Duncan v. United*

7    *States Department of Army*, 1989 WL 117742 at 2 (*unpublished opinion*) (both stating

8    identical purposes of enabling individuals to attract counsel and bring litigation).  In *Duncan,*

9    the Fourth Circuit upheld a district court's decision to prevent offset of an award of attorney's

10   fees under the Right to Financial Privacy Act.  The government sought to offset the award

11   of attorney's fees to pay a military fine owed by plaintiff.  *Duncan*, 1989 WL 117742 at 1-2.

12   In refusing to apply the offset statute, the Fourth Circuit agreed with the District Judge that

13   offset of attorney's fees would frustrate the purpose of the statute.  *Duncan*, 1989 WL

14   117742 at 2.  The Court explained "the district judge reasoned that to [allow the offset]

15   would be inconsistent with the purpose underlying the provision of the attorney's fees and

16   costs in a Right to Financial Privacy Act case. The purpose in preventing apportionment he

17   felt was to allow private individuals to interest attorneys, who because of the smallness of

18   the award in such cases would not otherwise probably take them." *Id.* at 2.

19   **3. *The Truth in Lending Act***

20        The statutory language of the Truth in Lending Act also resembles that of the EAJA.

21   It states that the creditor "is liable to that person [he has injured]" for a number of damages

22   and costs, including "reasonable attorney's fee." 15 U.S.C. § 1640(a). The Fifth Circuit held

23   attorney's fees are directly payable to the attorney under this statute.  *Plant v. Blazer*, 598

24   F.2d 1357, 1365 (5th Cir.1979).  In *Plant*, the Fifth Circuit determined that "the attorney is

25   entitled to the fee that is awarded him regardless of any controversy regarding the underlying

26   debt."  *Id*. at 1365.  Thus, the fee awards under the Truth in Lending Act are not subject to

27   offset for the plaintiff's debts.  The court noted that the true issue was "not whether plaintiff

28   is nominally to receive the money but whether ultimately it is to go to her attorney or to be

1  credited toward defendant in repayment of plaintiff's debt." *Id*. at 1366.

2  ### *4. The Civil Service Reform Act*

3  The Civil Service Reform Act provides that "the Board ... may require payment by the

4  agency involved of reasonable attorney's fees incurred by an employee ... if the employee is

5  the prevailing party." 5 U.S.C. § 7701(g)(1).  The Federal Circuit interpreted this statute to

6  award fees directly to the attorney. *Jensen v. Department of Transportation*, 858 F.2d 721,

7  722 (Fed.Cir.1988).  The Court  held that an award of attorney's fees under this act is

8  properly payable to the attorney, not the client, even when the plaintiff has already partially

9  paid counsel for his services and the statute has no reimbursement requirement. The court

10  rejected the argument that paying fees to counsel would constitute a windfall to counsel, and

11  instead determined that paying attorney's fees to the plaintiff would constitute a windfall to

12  the plaintiff.  *Id*. at 723-724.  In a subsequent case, the Federal Circuit re-affirmed this

13  decision*,* where it distinguished the attorney's right to collect the fee from the plaintiff's right

14  to seek the fee.  *Willis v. Government Accountability Office*, 448 F.3d 1341, 1347-1349

15  ("Under fee-shifting statutes in general, there is a distinction between the party's entitlement

16  to claim an award of fees and the attorney's right to receipt of fees that are awarded.")

17  ### *5. The False Claims Act*

18  The False Claims Act provides that "[the qui tam plaintiff] shall also receive ...

19  reasonable attorneys' fees." 31 U.S.C. § 3730(d).

20  ### *i. Ninth Circuit Law*

21  Significant to this Court, the Ninth Circuit held this award of fees is payable directly

22  to counsel.  *United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equipment, Inc.*, 89

23  F.3d 574, 575 (9th Cir.1996).  Analyzing whether the attorney fees should be paid to the

24  successful plaintiff or directly to the attorney, the Ninth Circuit called the issue a

25  "conundrum." *Id*. at 577.  Discussing the statutory language providing attorney's fees to the

26  plaintiff, the Court said "[o]n its face this seems to say that the plaintiff can recover the

27  attorneys' fees for himself.  What then of the attorney?  Are not the fees for his services and

28  should not he, if anyone, receive them?" *Id*. at 577.  The Ninth Circuit determined once the

plaintiff exercises the power to request attorney fees, "the attorney's right vests, and the defendant's duty becomes fixed." *Id*. at 578. Applying this logic, the Court held "[u]nder no condition was Virani entitled to receive direct payment of those fees from Lewis. If HP did not earn them, Lewis should not have to pay them at all; if HP did earn them, Lewis must pay them to HP." *Id*. at 579. The Court reasoned:

> The work was done by and the fees are for the plaintiff's attorney. They must be directed to the attorney. Were the rule otherwise, plaintiffs would obtain possession of fee awards, and attorneys would be left to attempt to obtain the money paid for their services as best they could. Left to the normal vicissitudes of life, substantial sums would be diverted from their intended purpose. Actions of the client or of the client's creditors (or heirs) would often intervene. That would not only thwart the Congressional purpose but would also make no sense at all and would lead to unconscionable results." *Id*. at 579.

### ii. The *Virani* Concurrence

One caveat to *Virani* must be mentioned. The concurring judge in the opinion, writing separately, stated he "would hold that, absent a contractual assignment to the attorney, the False Claims Act requires payment of attorneys' fee award to the party, with the ultimate disposition of the award dependent upon the contract between the attorney and client." *Id*. at 580 (Thomas, J., concurring). Judge Thomas concurred in this case because the plaintiff did have a valid contractual agreement in which he assigned his right to court-awarded attorneys' fees to his lawyers. *Id*. at 580.

### iii. Government's Position on *Virani*

The Government in the case before this Court contends a *Virani* analysis is not applicable to this case. Arguing against the application of *Virani*, the Government attempts to narrow the holding and thus effect of *Virani*. The Government correctly points out the Ninth Circuit declined to extend the *Virani* Court's analysis to civil rights cases under the Civil Rights Attorneys Fees Act of 1976, 42 U.S.C. § 1988(b). *See Gilbrook v. City of Westminister*, 177 F.3d 839 (9th Cir.1999). In *Gilbrook*, the Ninth Circuit acknowledged the *Virani* decision, but found in civil rights cases attorney fees must be paid to the actual party and not the attorney. The Court held "the majority's rationale in *Virani* does not apply to all federal fee-shifting statutes and, in particular, does not apply to fee awards under § 1988."

1    *Gilbrook*, 177 F.3d at 874.  Thus, in *Gilbrook* the award of attorney's fees was paid to the

2    party and not that party's attorney.

3         In the case pending before this Court, the Government argues *Virani* should not

4    inform an interpretation of the EAJA on the issue of direct payment of attorney's fees to the

5    attorney.  Instead, the Government argues, § 1988 cases like *Gilbrook* should inform an

6    analysis of EAJA cases.  The government supports its argument by citing two cases in which

7    courts loosely associate § 1988 and the EAJA.

8         In a case addressing whether expert witness fees are payable under § 1988, the United

9    States Supreme Court, in *dicta*, said that the EAJA was "the counterpart to § 1988 for

10   violation of federal rights by federal employees . . ." *West Viriginia University Hospitals,*

11   *Inc. V. Casey*, 499 U.S. 83, 88 (1991) (dictum), *reversed on other grounds by* Civil Rights

12   Act of 1991.  The government argues this statement proves § 1988 cases can be used to

13   interpret the EAJA.  The government's argument is a plausible interpretation of the *dicta* in

14   *Casey*, but it is not an absolute interpretation.  In *Casey*, when the Court compared § 1988

15   to the EAJA, the comparison was made to highlight a difference between the two statutes.

16   *Id*.  The statutes do not treat expert witness fees the same.  The EAJA is silent on the issue

17   of expert witness fees whereas § 1988 specifically allows them.  *Id*.  Thus, in *Casey* the

18   Supreme Court was actually pointing out a difference between § 1988 and the EAJA.

19   Furthermore, the Supreme Court's statement that the EAJA is a "counterpart to § 1988" was

20   *dicta* and not part of its holding.

21        To support its position that the EAJA should be interpreted the same as § 1988, the

22   government also cites a footnote from a United States Supreme Court case in which the

23   Court, in *dicta*, said "[t]he standards set forth in this opinion are generally applicable in all

24   cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley v.*

25   *Eckerhart*, 461 U.S. 424, 433 fn. 4 (1983).

26        *Hensley* is another civil rights case in which fees were awarded under § 1988.  It is

27   tempting to analogize § 1988 and the EAJA because both statutes award fees to the

28   "prevailing party."  *Compare* 42 U.S.C. § 1988(b) which permits the court to "allow the

- 19 -

prevailing party . . . a reasonable attorney's fee." with 28 U.S.C. § 2412(d) which provides "a court shall award to a prevailing party . . . fees . . .". Such a comparison, however, is an oversimplification of the two statutes. The footnote from *Hensley* referenced by the government compares § 1988 to other civil rights fee-shifting statutes. It does not compare § 1988 to the EAJA. Again, the government's argument that this case supports a uniform interpretation of § 1988 and the EAJA is plausible but still lacking. The connection between § 1988 and the EAJA based on the footnote in *Hensley* is further weakened by the fact that *Casey*, which distinguished § 1988 and the EAJA, was decided in 1991, well after the *Hensley* case. If it was important to the Supreme Court to analogize § 1988 and the EAJA, it could have taken the opportunity to do this in *Casey*. Instead, in *Casey*, the Supreme Court distinguished the two statutes at least with regard to the payment of expert witness fees.

The concern in analogizing § 1988 to the EAJA and employing § 1988 case law to interpret the EAJA is that these two statutes may serve fundamentally different purposes. Poor policy could result if they are interpreted in the same way with respect to payment of attorney fees. The Second Circuit addressed the differences between the EAJA as a federal fee-shifting statute and other civil rights fee-shifting statutes and held the EAJA was fundamentally different. *Oguachuba v. INS, et. al.*, 706 F.2d 93, 98-99 (2nd Cir. 1983). The Second Circuit reasoned awards under civil rights fee-shifting statutes "are usually the result of Congress's perception of the importance of the underlying statutory policies, of the need to encourage litigation as a means of enforcement of those policies or of a desire to see that the damages awarded to plaintiffs in such cases are not diminished by the need to pay counsel." *Oguachuba*, 706 F.2d at 98-99. The EAJA, in the opinion of the Second Circuit, differs from civil rights fee-shifting statutes because the EAJA was not enacted to "enhance enforcement of affirmative governmental policies, but to deter the government from bringing unfounded suits or engaging in arbitrary or unjust administrative behavior. That goal is in part achieved by rectifying the 'disparity in resources and expertise of ... individuals and their government.'" *Oguachuba*, 706 F.2d at 98-99, 1980 U.S.Code Cong. & Ad.News at 4984.

1   **6. Other District Courts Have Looked Beyond the Statutory Language of the EAJA and**
2   **Held Attorneys Can Be Paid the Award of Attorney's Fees Directly**

3          Other district courts that have engaged in analysis beyond the plain meaning of the
4   EAJA, have held that awards of attorney's fees under the EAJA can be paid directly to
5   attorneys. The Northern District of Alabama determined that the Savings Clause dictates that
6   attorney's fees can be payable directly to the attorney because a different interpretation would
7   render the Savings Clause superfluous. *Smith v. Astrue,* No. 06-J-02052-IPJ, at *4-7
8   (N.D.Ala. October 11, 2007). It also noted that its decision best satisfied the purpose of the
9   EAJA, while a decision paying fees to the plaintiff and subjecting them to administrative
10  offset would subvert the legislature's intent. *Id.* Likewise, the Western District of Missouri
11  determined that a fee award under the EAJA must be paid to counsel, since "[c]learly an
12  award for attorney's fees is intended to compensate the attorney, not generate income for the
13  claimant so that it may be attached by other federal agencies." *Richardson v. Astrue*, No.
14  06-0331-CV-W-SWH, at *2 (W.D. Mo. Oct 2, 2007), *see also Whatley v. Astrue,* No.
15  2:07-cv-00117-UWC, at *3-4 (N.D.Ala. Nov. 2, 2007) (holding that the plain language of
16  the EAJA requires the fee award payable to counsel, as any other reading would render the
17  Savings Clause nonsensical) and *Hagman v. Astrue,* No. 5:06-cv-198-OC-GRJ at *8
18  (M.D.Fl. December 27, 2007) (holding that payment of EAJA fees directly to the attorney
19  also is "consistent with the broad purpose for enacting the EAJA ... If the Commissioner's
20  narrow position was adopted, there would be a substantial risk that counsel for a successful
21  plaintiff might not be paid, which would have a chilling effect on the willingness of attorneys
22  to represent indigent claimants in Social Security cases thus thwarting the primary purpose
23  the EAJA was enacted.").

24          In addition to the district court cases discussed above, at least one circuit court has
25  determined that an award of attorney's fees can be payable directly to the attorney who
26  earned the fees. In an unpublished opinion, the Sixth Circuit held attorney fees can be
27  payable to counsel because while they are awarded for the benefit of the party, they are not
28  for the party to keep. *King v. Commissioner of Social Security*, 230 Fed.Appx. 476, 481 (6th

Cir. 2007) (*not selected for publication*).  Thus, like *Virani*, *King* required an actual party to bring a request for attorney fees, but allowed an award of those fees paid directly to counsel.

The judicial interpretation of the EAJA further supports the view that an award of attorney's fees under the EAJA should be paid directly to the attorney. To interpret the statute differently would require the Court to narrowly focus on the literal language of the statute, overlook the legislative intent behind its enactment, and disregard the effects of the interpretation on Congress's goal of reducing the deterrents and disparity in bringing meritorious litigation against the government, while providing an unintended windfall to prevailing parties.

### G. Assignment

The Government argues Plaintiff's counsel should have made an assignment agreement with Plaintiff to ensure she received her earned fees.  An assignment of the fee award from Plaintiff to Plaintiff's attorney, however, does not prevent offset of the award. The reality is that attorneys may still lose their fees to their clients' debts.  The plaintiff in a case has the beneficial interest in EAJA attorney's fees, which the Treasury Department has the authority to offset, despite any assignment interest claimed by the plaintiff's attorney. Thus, an assignment of the award of attorney's fees from the plaintiff to the attorney does not necessarily circumvent the plaintiff's outstanding debts.  An assignment only protects an attorney from offset of fees for debts of the plaintiff that arise *after* the assignment becomes effective.  *See Whitmore*, 2007 WL 276387 at 5.  The ultimate result is that an attorney representing a social security claimant and expecting to receive fees under the EAJA is not reasonably assured to any fees.

For all of the above reasoning, this Court is persuaded that Plaintiff's attorney in this case is entitled to direct receipt of the EAJA award of attorney's fees.

### III.  Recommendation

It is the Report and Recommendation of the Magistrate Judge that the District Judge after his independent review and analysis, GRANT Plaintiff's Motion for Attorney's Fees

1  in the full amount paid to Plaintiff's attorney because the fees requested are reasonable and
2  the statute allows the fee award be paid directly to Plaintiff's attorney.

3      Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within
4  ten days of being served with a copy of the Report and Recommendation.  If objections are
5  not timely filed, they may be deemed waived.  The parties are advised that any objections
6  filed are to be identified with the following case number: **cv-05-015-RCC**.

7      The Clerk is directed to mail a copy of the Report and Recommendation to the parties.

8      DATED this 4th day of April, 2008.

**CHARLES R. PYLE**
**UNITED STATES MAGISTRATE JUDGE**